FILED

2015 Mar-31  PM 01:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DALE DUCKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  2:13-cv-00374-SGC |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Dale Duckson, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  Duckson timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3).

### I. Procedural History

Duckson has a high school education and has previously worked as a press operator, automobile mechanic, and delivery driver.  (Tr. at 46, 51).  In his initial applications for DIB and SSI, Duckson alleged emphysema and leg problems with an initial onset date of April 23, 2008. (Tr. at 51-52, 133, 140, 157).  After his claims were denied, Duckson requested reconsideration, alleging a variety of additional ailments, including increased pain, discomfort, and numbness down the entire left side of his body, high blood pressure and cholesterol, stomach issues, muscle spasms, insomnia, depression, and anxiety.  (*Id.* at 55, 58, 182).  After his claims were again

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Rule 72 of the *Federal Rules of Civil Procedure*, the parties have voluntarily consented to the exercise of full dispositive jurisdiction by the undersigned magistrate judge. (Doc. 13).

denied, Duckson requested a hearing before an administrative law judge ("ALJ").  (*Id.* at 67, 73, 80).  Following a hearing held on July 15, 2011, the ALJ denied Duckson's claims.  (*Id.* at 10-16).   Duckson was fifty-three years old when the ALJ issued his decision on August 25, 2011.  (*Id.* at 26).  After the Appeals Council declined to review the ALJ's decision on December 20, 2012, that decision became the final decision of the Commissioner.  (*Id.* at 1-3).  Duckson initiated this action on February 25, 2013.  (Doc. 1).

## II. <u>Statutory and Regulatory Framework</u>

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.   20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  "Under the first step, the claimant has the burden to show that [he] is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 Fed. App'x 862, 863 (11th Cir. 2012).  If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Duckson met the Social Security Administration's insured status requirements through March 31, 2011, and had not engaged in substantial gainful activity since

April 23, 2008, the alleged onset date of his disability.  (Tr. at 11-12).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  *Id.* at §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Id.* at §§ 404.908, 416.908; *see also* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. §§ 404.1521(a), 416.921(a).  A claimant may be found disabled based on a combination of impairments, even though none of the individual impairments alone is disabling.  20 C.F.R. §§ 404.1523, 416.923.  The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity.  *Id.* at §§ 404.1512(a) and (c), 416.912(a) and (c).  If the claimant does not have a severe impairment or

---

[2] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

*Id.* at § 404.1521(b), 416.921(b).

combination of impairments, the Commissioner will find that the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined Duckson has the following severe impairments: lower back pain and chronic obstructive pulmonary disease ("COPD").  (Tr. at 12).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meet or equal one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also id.* at §§ 404.1525-26, 416.925-26.  The claimant bears the burden of proving his impairment meet or equal one of the Listings.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant's impairment meet or equal one of the Listings, the Commissioner will find that the claimant is disabled.  20 C.F.R §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d). At the third step, the ALJ found that Duckson does not have an impairment or combination of impairments that meet or medically equal the severity of one of the Listings.  (Tr. at 12).

If the claimant's impairment do not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step.  *Id.* at §§ 404.1520(e), 416.920(e); *see also id.* at §§ 404.1545, 416.945.   A claimant's RFC is the most he can do despite his impairments.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   At the fourth step, the Commissioner will compare her assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work.  *Id.* at §§ 404.1520(a)(4)(iv) and (e), 404.1560(b), 416.920(a)(4)(iv) and (e), 416.960(b).   "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  *Id.* §§ 404.1560(b)(1), 416.960(b)(1).  The claimant bears the burden of proving his impairment prevent

him from performing his past relevant work.  *Reynolds-Buckley*, 457 Fed. App'x at 863.  If the claimant is capable of performing his past relevant work, the Commissioner will find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b)(3), 416.920(a)(4)(iv), 416.960(b)(3).  Before proceeding to the fourth step, the ALJ found Duckson has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that he can only occasionally climb stairs, kneel, climb ladders, stoop, crouch, balance, crawl, or work with hazards (e.g., heights, moving parts, etc.).  (Tr. at 12-13).  At the fourth step, the ALJ determined Duckson is unable to perform any past relevant work.  (*Id.* at 15).

If the claimant is unable to perform his past relevant work, the Commissioner must finally determine whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 404.1560(c)(1), 416.920(a)(4)(v) and (g)(1), 416.960(c)(1).  If the claimant is capable of performing other work, the Commissioner will find that the claimant is not disabled.  *Id.*  §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).  If the claimant is not capable of performing other work, the Commissioner will find that the claimant is disabled.  *Id.*  At the fifth step, considering Duckson's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Duckson can perform, such as those of a packager or a clearner.  (Tr. at 15-16).  Therefore, the ALJ concluded Duckson was not disabled and denied his claims.  (*Id.* at 16).

### III. <u>Standard of Review</u>

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct

legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. <u>Discussion</u>

Duckson raises the following issues in his appeal: (1) the ALJ's finding he did not meet a listed impairment is not based on substantial evidence, (2) application of Grid Rule 201.12 or 201.14 direct a finding of disability, (3) his treating physician's opinion should have been given controlling weight, (4) the ALJ's credibility finding is not based on substantial evidence, (5) the

ALJ disregarded the vocational expert's response to a hypothetical posed by his attorney, and (6) his current age support remand of the Commissioner's decision.

### A. Listing 1.04A

First, Duckson argues the ALJ's determination his impairment does not meet Listing 1.04A is not supported by substantial evidence.  (Doc. 9 at 4-6).  Duckson claims his medical records show a diagnosis of degenerative disc disease with radiculopathy, a limited range of motion of his spine, muscle atrophy, a loss of muscle strength, numbness down his leg and into his foot, and a positive straight-leg raising ("SLR") test bilaterally.  (*Id.* at 5).

A plaintiff is disabled if his impairment meet or equal a Listing.  20 C.F.R. §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  "To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement."  *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)); *see also* 20 C.F.R. § 416.925(a)-(d).  "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'"  *Wilson*, 284 F.3d at 1224 (citing 20 C.F.R. § 404.1526(a)); *see also* 20 C.F.R. § 416.926(a).  A claimant's impairment must meet or equal *all* of the specified medical criteria in a particular Listing for the claimant to be found disabled at step three of the sequential evaluation.  *Sullivan v. Zebley*, 493 U.S. 521, 530-32 (1990).  An impairment that manifests only some of the criteria do not qualify, no matter how severe.  *Id.* at 530.  A claimant's burden of proving his impairment meet or equal a Listing is a heavy one because "the [L]istings were designed to operate as a presumption of disability that makes further inquiry unnecessary."  *Id.* at 532.

Listing 1.04A provides for disability where there is a disorder of the spine, such as

7

degenerative disc disease, resulting in compromise of a nerve root or the spinal cord, with

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

Here, the ALJ found the record is devoid of evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with accompanying ineffective ambulation.  (Tr. at 12).  Substantial evidence supports this determination.

On March 22, 2008, Marvin R. McCreary, M.D., diagnosed Duckson with an acute lumbar strain and degenerative disc disease in his lumbar area and noted Duckson complained of intermittent pain shooting toward his left leg, as well as some slight numbness in his left foot.  (*Id.* at 214-15).  However, Dr. McCreary also noted Duckson had a negative SLR test bilaterally, his sensation was grossly intact as to his bilateral lower extremities, and his muscle strength was normal.  (*Id.* at 216, 219).

Duckson saw James M. McGinnis, D.O., in May, August, and September of 2008.  (*Id.* at 298-99, 302-03).  Although Dr. McGinnis noted abnormalities in Duckson's lower back, mild

radiculopathy, muscle atrophy, and deconditioning over the course of these appointments, as well as that Duckson ambulated with a cane, he did not note any limited range of motion of the spine, sensory or reflex loss, or positive straight-leg raising.  (*Id.*).

After examining Duckson on October 29, 2009, Phillip Swedberg, M.D., a medical consultant, found Duckson had some limited range of motion, a positive SLR test bilaterally, and decreased sensation over his left leg.  (*Id.* at 244-45).  However, Dr. Swedberg also determined Duckson's muscle strength was normal on the right and good on the left and that there was no evidence of muscle atrophy.  (*Id.* at 239, 245).

At various times during 2009, either Dr. McGinnis or Lynda Hieneman, a nurse practitioner, noted Duckson continued to complain of lower back pain, ambulated with a cane, and had muscle atrophy and a limited range of motion.  (*Id.* at 231-236).  However, neither noted the results of any straight-leg raising test or test of Duckson's reflexes (*see id.*), and on August 3, 2009, Dr. McGinnis noted Duckson's sensations were normal (*id.* at 231).  Similarly, Duckson's records of appointments with Hieneman and Dr. McGinnis during 2010 reflect lower back pain, muscle atrophy, an antalgic gate, and ambulation with a cane, but do not include findings as to all of the symptoms included in Listing 1.04A.  (*See id.* at 259-64, 281-87).  Finally, the single medical record from 2011 in the transcript, dated January 26, 2011, notes Duckson's continued pain, antalgic gait, and ambulation with a cane, but does not include findings as to all of the symptoms included in Listing 1.04A.  (*Id.* at 280).

In sum, while Duckson's medical records may provide evidence of symptoms included in Listing 1.04A that he exhibited at various times between April 22, 2008 and January 26, 2011, there is substantial evidence to support the ALJ's determination Duckson does not meet Listing 1.04A.  To meet Listing 1.04A, Duckson's medical records would have to show Duckson

suffered from all of the symptoms included in the Listing simultaneously for a continuous twelve-month period.

**B. Grid Rules 201.12 and 201.14**

In the alternative, Duckson argues even if his impairment does not meet Listing 1.04A, it puts his ability to work at a sedentary level, such that Grid Rule 201.12 or 201.14 would apply to direct a finding of disability.  (Doc. 9 at 6).

There are two ways for an ALJ to determine at the fifth step whether other work exists in substantial numbers in the national economy that a claimant is capable of performing.  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  First, an ALJ may use the Medical-Vocational Guidelines, also known as the "Grids," found at 20 C.F.R. Part 4, Subpart P, Appendix 2.  *Id.*

> The [G]rids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each of these factors can independently limit the number of jobs realistically available to an individual.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

*Id.* at 1240; *see also Gibson v. Heckler*, 762 F.2d 1516, 1520 (11th Cir. 1985).  However, an ALJ may not rely on the Grids exclusively when a claimant is unable to perform a full range of work at a given residual functional level.  *Phillips*, 357 F.3d at 1242; *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989).   In that case, an ALJ must consult a Vocational Expert ("VE"), who is "an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments."  *Phillips*, 357 F.3d at 1240, 1242.

Here, the ALJ determined Duckson is capable of performing light work with certain limitations.  (Tr. at 12-15).  The Grid Rules Duckson cites would only apply to him if he were limited to sedentary work.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 201.12, 201.14. Duckson does not articulate why he believes his impairments limit him to sedentary work.

Substantial evidence supports the ALJ's determination Duckson is capable of performing light work with certain limitations.

Light work is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). Furthermore, "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* W. Jerry McCloud, M.D., the medical consultant who performed Duckson's RFC assessment on December 29, 2009, determined Duckson can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk for a total of approximately six hours in an eight-hour workday, sit for a total of approximately six hours in an eight-hour workday, and that Duckson's ability to push and/or pull is unlimited. (Tr. at 248). Dr. McCloud further determined Duckson can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, although he can never climb ladders, ropes, or scaffolds. (*Id.* at 249).

Dr. Swedberg, a medical consultant who examined Duckson on October 29, 2009, determined Duckson "appears capable of performing at least a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting and carrying heavy objects." (*Id.* at 246). Dr. Swedberg further found Duckson "has no difficulty reaching, grasping, and handling objects" and that "[t]here are no visual and/or communication limitations nor are there environmental limitations." (*Id.*). Because substantial evidence supports the ALJ's determination Duckson is capable of performing light work with certain limitations, Grid Rules 201.12 and 201.14 do not apply to Duckson.

### C. Weight Given to Treating Physician's Opinion

Next, Duckson argues the ALJ erred in failing to give the opinions of his treating physician controlling weight.  (Doc. 9 at 6-9).  Duckson identifies a number of his treating physician's opinions he alleges the ALJ failed to give controlling weight, including that his "radiculopathy was complicating matters," his "ability to walk is severely impaired," and he is disabled and qualifies for disability benefits.  (*Id.* at 8-9, 260, 263, 299).

" 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.'"  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "Absent 'good cause,' an AJL is to give the medical opinions of treating physicians 'substantial or considerable weight.'"  *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (citing 20 C.F.R. §§ 404.1527(d)(1)-(2), 416.927(d)(1)-(2)).  " Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'"  *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).  "With good cause, an ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so."  *Winschel*, 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1240-41).  An ALJ must also explain the particular weight given to different medical opinions.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Ordinarily, an ALJ's failure to do so is reversible error.  *Tillman v. Comm'r, Soc. Sec. Admin.*, 559 Fed. App'x 975, 975 (11th Cir. 2014); *see also Caldwell v. Barnhart*, 261

Fed. App'x 188, 190 (11th Cir. 2008).  "When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."  *Caldwell*, 261 Fed. App'x at 190; *see also Tillman*, 558 Fed. App'x at 975.

Although Duckson argues the ALJ erred in failing to give the opinions of his treating physician controlling weight, it is not clear what weight the ALJ gave those opinions at all, as the Commissioner concedes  (Doc. 11 at 11).  Therefore, the question is whether the ALJ's failure to explicitly assign weight to certain opinions of Duckson's treating physician constitutes harmless error.  The undersigned concludes it does.

Although the ALJ did not explicitly assign weight to certain opinions of Duckson's treating physician, he did explicitly note and consider the diagnostic evidence on which the treating physician relied in forming his opinions.  That is, he found the medical evidence, including records of Duckson's treating physician, established his diagnoses but not the limiting effects of those diagnoses as claimed by Duckson.  (Tr. at 13).  In fact, the ALJ found the medical evidence, including records of Duckson's treating physician, supported a greater functional capacity than Duckson alleges.  (*Id.*).  Although the ALJ made these findings in the course of discrediting Duckson's testimony of pain and other subjective symptoms, rather than in assigning specific weight to the opinions of Duckson's treating physician, the general proposition the ALJ discredited (i.e., Duckson's disability) is the same.

Furthermore, the treating physician's conclusory statement Duckson is disabled and qualifies for disability benefits is, technically, not a medical opinion, but rather an opinion on an issue reserved for determination by the Commissioner not entitled to any special significance.  20 C.F.R. §§ 404.1527(d)(1) and (3), 416.927(d)(1) and (3).  Under similar circumstances, the

Eleventh Circuit has held an ALJ's failure to explicitly assign weight to the opinions of physicians who treated a claimant was harmless error. *See Tillman*, 559 Fed. App'x at 975-76 (holding ALJ's failure to specifically reference opinions of treating physicians was harmless error, where ALJ expressly noted and considered diagnostic evidence on which those physicians relied in forming their opinions, that evidence showed claimant was not disabled, and those opinions concerned matters ultimately reserved to the Commissioner for final determination).

For the foregoing reasons, while the ALJ may have failed to specifically reference certain opinions of Duckson's treating physician or the weight attributed to them and why, this failure did not affect the result. Accordingly, the failure is a harmless error.

The undersigned also notes the ALJ clearly articulated his reasons for assigning great weight to the medical opinions of Dr. Swedberg, a consulting physician who examined Duckson on October 29, 2009, and Dr. McCloud, a medical consultant who performed Duckson's RFC assessment on December 29, 2009. (Tr. at 14). In evaluating medical opinions, an ALJ considers a variety of factors, including the examining relationship, treating relationship, evidence presented to support the opinion, consistency of the opinion with other evidence, and specialization of the medical professional. 20 C.F.R. §§ 404.1527(c), 416.927(c). Here, the ALJ found Dr. Swedberg's opinion Duckson is capable of performing a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, lifting, and carrying heavy objects is entitled to great weight because it is supported by the physician's examination of Duckson and is consistent with the longitudinal record. (Tr. at 14). The ALJ found Dr. McCloud's opinion Duckson has a light residual functional capacity with postural limitations associated with a back impairment is consistent with objective evidence in the record. (*Id.*). Duckson does not argue the ALJ's reasons for assigning great weight to the opinions of Dr. Swedberg and Dr. McCloud

are not supported by substantial evidence.

### D. ALJ's Credibility Determination

Next, Duckson argues the ALJ's determination of his credibility is not supported by substantial evidence.  When a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms, the pain standard articulated by the Eleventh Circuit in *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991), applies.  *See also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

> The pain standard requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Dyer*, 395 F.3d at 1210 (quoting *Holt*, 921 F.2d at 1223).  Provided the *Holt* pain standard is met, an ALJ considers a claimant's testimony of pain or other subjective symptoms.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  *Id.* at 1561,

An ALJ is permitted to discredit a claimant's subjective testimony of pain or other symptoms if he "clearly 'articulate[s] explicit and adequate reasons'" for doing so.  *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561-62).  While an explicit finding as to credibility is not required, " 'the implication must be obvious to the reviewing court.'"  *Dyer*, 395 F.3d at 1210 (quoting Foote, 67 F.3d at 1562).  Furthermore, although a credibility determination is not required to contain "particular phrases or formulations," "it cannot merely be a broad rejection," as that is insufficient for a reviewing court to conclude an ALJ considered a claimant's medical condition as a whole.  *Dyer*, 395 F.3d at 1210 (internal quotation marks omitted) (quoting *Foote*,

67 F.3d at 1561). "A clearly articulated credibility finding with substantial supporting evidence will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562. In determining credibility an ALJ may consider objective medical evidence and a claimant's reported daily activities, amongst other things. 20 C.F.R. §§ 404.1529(c), 416.929(c).

Here, the ALJ determined Duckson's medically determinable impairments (i.e., lower back pain and COPD) could reasonably be expected to cause the symptoms as to which he testified (i.e., lower back pain and shortness of breath) but that Duckson's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with his RFC. (Tr. at 13). The ALJ clearly articulated his reasons for discrediting Duckson's testimony of his symptoms and their limiting effects.

First, the ALJ found that while the medical evidence establishes Duckson's diagnoses, it does not support his claims as to the vast limiting effects of his impairments. (*Id.*). As an example, the ALJ cites records from Ducksons's treating physician noting Duckson's reported radiating pain, his antalgic gait, and his muscle atrophy but not suggesting Duckson has extreme physical limitations. (*Id.* at 13, 288-306).

The ALJ found the medical evidence, in fact, supports a greater functional capacity than Duckson alleges. (Id. at 13). The ALJ cites a 2008 MRI of Duckson's lumbar spine that showed only a small paracentral disc protrusion at the L5-S1 level and mild bulging at the L3-L4 and L4-L5 levels, noting the MRI provides no objective explanation for the pervasiveness of the symptoms Duckson alleges and, in fact, is inconsistent with the alleged severity of Duckson's symptoms. (*Id.* at 13, 228). The ALJ cites a 2009 MRI that resulted in a diagnosis substantially the same as the 2008 MRI. (*Id.* at 13, 290). The ALJ cites a 2009 sensory conduction study that indicated no hypersthetic findings. (*Id.* at 13, 292). Further, the ALJ notes Duckson's treating

physician recommended Duckson stay active and increase physical activity, which the ALJ found to be inconsistent with Duckson's claim he is unable to perform even sedentary work and that his COPD has been treated conservatively. (*Id.* 13, 260, 262).

Second, the ALJ found Duckson's activities of daily living are inconsistent with his claim he is incapable of even sedentary work. (Id. at 13). The ALJ notes Duckson testified he is able to shop for groceries, lift as many as two grocery bags, cook, and care for himself. (*Id.* at 13-14, 32-35). The ALJ recognized Duckson's allegations of pain associated with these activities of daily living, but looking at the entirety of Duckson's testimony and the longitudinal record, found it clear Duckson is able to engage in most basic activities without substantial assistance from caretakers. (*Id.* at 14).

Third, the ALJ found Duckson's allegations regarding his functional capacity are vague and equivocal. (*Id.* at 14). To support this finding, the ALJ notes that while Duckson alleges he can sit for only ten minutes, he was able to sit throughout the forty-minute hearing. (*Id.*). Duckson points out that the ALJ is mistaken and the record shows he stood up after he concluded his testimony and the ALJ began questioning the vocational expert. (Doc. 9 at 14). The Commissioner concedes this point in her brief. (Doc. 11 at 17). Although the ALJ incorrectly stated Duckson sat throughout the forty-minute hearing, this error is harmless. First, as the Commissioner notes, Duckson provided inconsistent testimony regarding his ability to sit, initially claiming he could only sit for ten to fifteen minutes and then that he could sit for forty-five minutes. (Doc. 11 at 17; Tr. at 39-40). This inconsistent testimony supports the ALJ's finding that Duckson's allegations regarding his functional capacity are vague and equivocal. Second, the ALJ gave a number of other reasons for discrediting Duckson's testimony of his symptoms and their limiting effects, and those reasons constitute substantial evidence supporting

the ALJ's credibility determination.

Finally, the ALJ found that opinion evidence in the record indicates a higher level of functioning than Duckson alleges. (*Id.* at 14). The ALJ gave great weight to the opinion of Dr. Swedberg, a medical consultant who examined Duckson and determined he is capable of performing a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, lifting, and carrying objects, which the ALJ found consistent with the longitudinal record. (*Id.* at 14, 246). The ALJ also gave great weight to the opinion of Dr. McCloud, a medical consultant who determined Duckson has a light residual functional capacity with postural limitations associated with his back impairments. (*Id.* at 14; 248).

In sum, the ALJ sufficiently articulated his reasons for discrediting Duckson's testimony of his symptoms and their limiting effects, and that credibility determination is supported by substantial evidence.

### E. Hypothetical Posed to VE

As a corollary to his point the ALJ incorrectly stated he was able to sit throughout the forty-minute hearing, Duckson argues even if he could only sit for between 40 and 45 minutes before he had to stand, he would be incapable of performing the jobs identified by the VE. (Doc. 9 at 14-15). More specifically, he argues the ALJ disregarded the VE's response to a hypothetical posed by his attorney. The basis for Duckson's argument is the following exchange between his attorney and the VE:

> Q (Duckson's attorney): If [Duckson] was off task 10 minutes out of every hour, would he be able to maintain employment?

> A (VE): I don't believe so.

> Q: Okay. And that is based off—I'm getting that from his testimony that he would have to stand for five to 10 minutes after 45 minutes. If he could only

stand one hour out of every day, would he be able to perform those jobs that you list at the light level?

> A: No.

(Tr. at 48-49).  For a VE's testimony to constitute substantial evidence that a significant number of jobs exist in the national economy that a claimant could perform, an ALJ must pose hypothetical questions to the VE comprising all of the claimant's impairments.  *Ingram*, 496 F.3d at 1270.  Although the hypothetical must include all of the claimant's impairments, it need not include "each and every symptom of the claimant."  *Id.*  Nor is it required to include limitations the ALJ has properly rejected as unsupported.  *Allen v. Barnhart*, 174 Fed. App'x 497, 499 (11th Cir. 2006); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the ALJ properly disregarded the VE's response to the hypothetical posed by Duckson's attorney.  The ALJ properly discredited Duckson's credibility regarding the functional limitations of his impairments (*see supra*), and he did not otherwise find Duckson had a sit-stand limitation (Tr. at 12-13).  The RFC assessment of Duckson performed by Dr. McCloud supports the absence of a sit-stand limitation, as Dr. McCloud determined Duckson could sit for approximately six hours in an eight-hour work day, rather than that he needed to periodically alternate sitting and standing to relieve pain or discomfort (*Id.* at 248).

In any event, the questions posed to the VE by Duckson's attorney do not support the conclusion Duckson could not maintain the jobs identified by the VE if he had to stand for 10 minutes after sitting between 40 and 45 minutes.  The first question posed to the VE by Duckson's attorney was whether Duckson could maintain the jobs she identified if he "was off task" ten minutes each hour.  Needing to stand for ten minutes each hour does not necessarily mean being off task for ten minutes each hour.  The second question posed to the VE by

Duckson's attorney was whether Duckson could maintain the jobs she identified if "he could only stand one hour out of every day."  Duckson did not testify he could only stand one hour out of every day, nor does the record evidence support any such limitation.

### F. Duckson's Age

Finally, Duckson cites his current age as supporting remand.  (Doc. 9 at 15-16).  He notes that at the time of the hearing, he was fifty-three years old and, therefore, categorized as "closely approaching advanced age" (*id.* at 15), which the Regulations define as between 50 and 54 years of age, 20 C.F.R. §§ 404.1563(d), 416.963(d).  However, when he filed his brief in this district court, he was fifty-five years old and, therefore, a person of "advanced age" (Doc. 9 at 15), which the Regulations define as age 55 or older, 20 C.F.R. §§ 404.1563(e), 416.963(e). According to Duckson, his categorization as a person of "advanced age" would result in a determination of disability using the Grids.  (Doc. 9 at 16).  The ALJ did not mechanistically rely on the Grids in determining Duckson is not disabled.  *See Miller v. Comm'r of Soc. Sec.*, 241 Fed. App'x 631, 635 (11th Cir. 2007) (finding treatment of claimant as either person of "advanced age" or "closely approaching advanced age" was "essentially theoretical" because ALJ did not rely on Grids exclusively in making disability determination).  Regardless, Duckson does not argue the ALJ improperly identified him as "closely approaching advanced age" at the time of the hearing.  (Doc. 9 at 15).  Nor could he.  The relevant date in determining a claimant's age for purposes of applying the Grids is the date on which the ALJ renders his decision. *Overstreet v. Astrue*, 2012 WL 1946719, at *3 (N.D. Ala. May 29, 2012) (citing *Crook v. Barnhart*, 244 F. Supp. 2d 1281, 1283 (N.D. Ala. 2003)).  On that date, Duckson was 53 years old and, thus, considered "closely approaching advanced age."  *See*  20 C.F.R. §§ 404.1563(d), 416.963(d).

**V. Conclusion**

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.   Therefore, that decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 31st day of March, 2015.

_Staci G. Cornelius_
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE